## ADAMS v. ADAMS.

No. 1103. Opinion Filed November 18, 1911.

(120 Pac. 566.)

1. **DIVORCE — Conflicting Evidence — Appeal — Review.** In a contested divorce case, where the evidence is conflicting, and there is sufficient competent evidence to support the findings of the court and the decree based thereon, the same will not be disturbed.

2. **SAME—Alimony—Allotment.** Under the laws of Arkansas, in force in Indian Territory prior to statehood, the court was without authority to decree absolutely a certain and specific sum of money, or a certain specific portion of the property, as alimony, but had authority to decree alimony in a continuous allotment of sums, payable at regular intervals.

3. **SAME—Alimony—Allotment.** In a suit for divorce, filed prior to statehood, and wherein plaintiff was awarded a divorce and alimony, and the order decreeing alimony provided that defendant should pay plaintiff "the sum of $1,000, payable as follows, $20 on the 15th day of each and every succeeding month, until the sum of $1,000 is paid in full," held, that this order provided for the payment of alimony "in a continuous allotment of sums, payable at regular intervals," and was within the authority of the court.

(Syllabus by Brewer, C.)

*Error from District Court, McClain County; R. McMillan, Judge.*

Action by L. C. Adams against John C. Adams. Judgment for plaintiff, and defendant brings error. Affirmed.

*J. W. Hocker,* for plaintiff in error.

*J. F. Sharp,* for defendant in error.

Opinion by BREWER, C.   This was a suit for divorce, filed on the 30th day of January, 1907, in the United States Court for the Southern District of the Indian Territory, sitting at Purcell.   It was pending at the time of statehood, and was thereafter tried in the district court of the county of McClain on the 13th day of February, 1909.

The court found generally for the defendant in error, L. C. Adams, plaintiff below, who will be hereafter called plaintiff, and against plaintiff in error, John C. Adams, defendant below, who will hereafter be called defendant.

The plaintiff in her complaint alleged, by proper averments, the following ground under the Arkansas law, in force in Indian Territory, for her cause of action:   The defendant had been guilty of cruel and barbarous treatment, such as to endanger plaintiff's life, and the offering of such indignities to the person of plaintiff as to render her condition intolerable.

The defendant filed answer, consisting of a general and specific denial, and for cross-bill alleged that the plaintiff had been guilty of such cruel and barbarous treatment as to endanger his life, and had offered such indignities to his person as to render his condition intolerable.

The court found that all the material allegations of plaintiff's complaint had been fully sustained by the evidence; that plaintiff was without fault in the premises; and that she is entitled to divorce as prayed for and to reasonable alimony.   After dissolving the marriage relation, in the decree adjudging the question of alimony, the following appears:

"It is further ordered, adjudged, and decreed that defendant, John C. Adams, pay to the plaintiff, L. C. Adams, as her reasonable alimony, the sum of one thousand dollars ($1,000), payable as follows:   $20 on the 15th day of each and every succeeding month, until the sum of $1,000 is paid in full, but defendant may fully pay off and discharge said entire sum at any time within 60 days of date hereof; that until the said judgment of alimony is paid off and fully discharged the same shall be a lien upon the real estate of defendant, John C. Adams, situated within McClain county, Oklahoma."

Upon the rendition of the decree for plaintiff for divorce and alimony as above stated, the defendant filed a motion for a new trial, and set up the following grounds: (1) "Because the finding of the court is not supported by the testimony adduced." (2) "Because the allowance of alimony is contrary to law and well-established precedent of equity." The motion for a new trial was overruled, exceptions were saved, and defendant below, as plaintiff in error, brings this cause to this court for review.

We will dispose of the questions raised in the order in which they appear in the motion for a new trial, and in discussing the first proposition, that the finding of the court is not supported by the testimony, we find that the evidence fairly presents the following state of facts: The parties were married in 1896. At the time of the marriage, defendant owned four or five head of horses· and about $200. The plaintiff, Mrs. Adams, was an Indian woman, with two Indian children. She and the children appear to have owned and were in possession of several large Canadian River bottom land farms. The home place had a large two-story residence on it, used as a home by Mrs. Adams and her children. Mr. Adams, after the marriage, resided with his wife on the home farm. One of the children lived with them most of the time; the other part of the time. The defendant took charge of the home farm generally, and there is conflict in the evidence about his connection with the farms that were afterwards allotted to the children. It seems pretty fairly established that he got some revenue from these· farms. By his marriage, he became entitled to be, and was enrolled, as an Indian citizen. He took his allotment out of the lands held by his wife and her children, as Indian citizens, at the time of the marriage. He improved it while living with the plaintiff. The plaintiff took the old home place as her allotment. These parties lived together from the time of marriage in 1896 to the 25th of March, 1904. They seem to have improved both allotments out of the general revenues from both farms; no separate account of same being kept. On March 25, 1904, defendant left plaintiff and moved

away. He left her very little personal property, if any. Plaintiff testified: "He left me two old horses I had when we were married. He never left me a cow nor a hog." The home place (allotment of plaintiff) is shown to be worth six to eight thousand dollars. Defendant is shown by the proof to be worth between ten and twelve thousand dollars.

There is evidence on the part of plaintiff that defendant was cross, ill-natured, fault-finding, of high temper that he did not make much effort to control; that he habitually used profane language about the house in the presence of plaintiff; that, on account of his failure to make settlement of funds claimed to be in his hands, trouble arose between him and plaintiff's children; that defendant was often angry, and spoke crossly and in an abusive manner towards plaintiff; that he absented himself for considerable periods of time, extending into weeks, without communicating with plaintiff; that defendant was jealous, and in effect accused plaintiff of improper conduct toward other men, at least by insinuation. There was evidence on part of defendant to disprove all this, which, if true, would entirely exonerate him from blame. The evidence being quite voluminous, it is difficult to pick out, and impracticable to insert here the evidence at length.

It was conflicting, and, taken as a whole, is not very satisfactory, and it is more than likely that, as usual in such cases, both were more or less to blame. That the constant quarreling, bickering, and strife between these parties, extending over several years, has produced a condition that renders it impossible that these parties ever live together is freely admitted by both; and the court who saw the parties and all the witnesses, and heard their statements, and saw their demeanor, during the lengthy trial, has weighed the evidence and concluded therefrom that the plaintiff has sustained the allegation of her complaint, and that she was without fault, regarding the marital unhappiness between them, and we cannot, upon a careful examination of the evidence, say that it is not sufficient to support the findings of the court. There is no suggestion of collusion in the case; in fact,

the contest was waged with a vigor almost amounting to bitterness. The only thing, perhaps, upon which there is agreement, is that it would be utterly impossible for them to ever again live together as man and wife with any degree of concord.

The second proposition, that the court erred in allowing alimony, is argued by the plaintiff in error upon a false premise. To quote from the beginning of his argument:

"Under the proof, a divorce should have been granted to the defendant on his cross-bill, and then the question in the case arises: The alimony may not be granted, except when the wife is without. fault."

The plaintiff in error seems to base his entire argument on the proposition that the wife could not be awarded alimony, because she was not without fault, and this, notwithstanding that the court found and held that she was without fault, and had fully sustained all the material allegations of her complaint. However, even if the court should have held her to have been at fault, and had even found against her, and had granted defendant a divorce on his cross-bill, even then the argument of defendant would not be sound. This precise question has been determined in this court in the case of *Ecker v. Ecker,* 22 Okla. 873, 98 Pac. 918, 20 L. R. A. (N. S.) 421. In this case the court quotes section 2565, Mansf. Dig. Ark. (Ind. Ter. Ann. St. 1899, sec. 1853), as follows:

"When a decree shall be entered the court shall make such order touching the alimony of the wife and care of the children, if there be any, as from the circumstances of the parties and the nature of the case shall be reasonable."

And then says: "Under the language of this statute or similar language of other states, the courts have held that the authority of the court to make orders touching the alimony of the wife is not limited to those cases in which she prevails, or that whether the guilty wife will be granted alimony, and the amount thereof, is within the discretionary power of the court, to be controlled by the circumstances of each case."

*Reavis v. Reavis,* 1 Scam. (Ill.) 242; *Deenis v. Deenis,* 79 Ill. 74; *Spitler v. Spitler,* 108 Ill. 120; *Edwards v. Edwards,* 84

Ala. 361, 3 South. 896; *McDonald v. McDonald,* 117 Iowa, 307, 90 N. W. 603; *Reynolds v. Reynolds,* 92 Mich. 104, 52 N. W. 295; *Lofvander v. Lofvander,* 146 Mich. 370, 109 N. W. 662; *Pauly v. Pauly,* 14 Okla. 1, 76 Pac. 148; Bishop on Marriage, Divorce and Separation, vol. 2, p. 865; Nelson on Divorce and Separation, vol. 2, p. 907.

That the court had power to grant alimony to the wife, if she was without fault, or, stated otherwise, in a case in which she prevails, and under the evidence ought to have prevailed, is neither denied nor discussed by defendant. He assumes that the court had such power, and in this he is right; it had.

The defendant has raised no question as to the kind of order made by the court in awarding the alimony; he does not claim that it is the award of a specific sum of money, or a certain specific portion of the property; had he done so, he would have presented a far graver question. In *Brown v. Brown,* 38 Ark. 324, cited and approved in *Ecker v. Ecker, supra,* it is held:

"That the court is without authority to decree absolutely a certain and specific sum of money, or a certain specific portion of the property, as alimony, but may decree alimony in a continuous allotment of sums, payable at regular intervals."

In this case the order, it is true, names the specific sum of $1,000, but it adds, "payable $20 on the 15th day of each and every succeeding month, until the sum of $1,000 is paid in full."

We believe it is a reasonable construction of this order to say that the naming of $1,000 is intended as a limitation of the period in which these monthly payments shall continue. In other words, that the order is equivalent to having said that plaintiff shall be paid the sum of $20 each month for the term and period of four years and two months, which is the time it would take, at the rate named, to pay $1,000. We therefore do not think the award fatally defective, although not in the best form. We think it means to provide for the payment of alimony "in a continuous allotment of sums, payable at regular intervals," and being such comes fairly within the law.

We fail to find that the court has committed reversible error, and the cause should therefore be in all things affirmed.

By the Court: It is so ordered.

All the Justices concur.